IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | NO. 3:16-cr-00133 |
| v. ) | JUDGE RICHARDSON |
| ) | |
| ) | |
| CHRISTOPHER JERMAINE KELLEY ) | |

**MEMORANDUM OPINION**

Pending before the Court is "Defendant's *Pro Se* Motion for Release to Home Confinement Pursuant to 18 U.S.C. § 3624(c)(2) or Compassionate Release Sentence Reduction, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" (Doc. No. 125, "Motion"). Via the Motion, Defendant seeks to be released to home confinement, pursuant to 18 U.S.C. § 3624(c)(2), or alternatively, immediately released from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (commonly referred to broadly as "compassionate release"). Additionally, the Defendant requests the appointment of counsel. The Government has filed a response in opposition (Doc. No. 129, "Response"), arguing that the Motion should be denied because Defendant has not established "extraordinary and compelling reasons for his release" and that consideration of the 18 U.S.C. § 3553(a) factors counsels strongly against granting compassionate release.[1]

BACKGROUND

On June 15, 2016, Defendant was indicted on one count of felon in possession of a firearm, in violation of 18 U.S.C. §§922(g)(1) and 924. (Doc. No. 13). Approximately eleven months later, Defendant pled guilty, pursuant to a plea agreement under Fed. R. Crim P. 11(c)(1)(C), which set

---

[1] The Government's response does not address Defendant's request for release to home confinement, pursuant to 18 U.S.C. § 3624(c)(2), or Defendant's request for appointment of counsel. Nevertheless, the Court intends to address each of the Defendant's requests presented in the Motion.

forth a joint sentencing recommendation—binding on the district court if accepted by the district court—of an "effective" sentence of 100 months' imprisonment (and a three-year term of supervised release). (Doc. No. 46 at 8). The plea agreement also contemplated that by the time of sentencing, Defendant would have accrued two months' credit, which was to be deducted from the 100 months such that the sentence imposed would actually be 98 months. (*Id.* at n.1).[2] At sentencing on September 27, 2017, the Court accepted the parties' sentencing recommendation and sentenced Defendant to 97 months' custody, giving Defendant three months' credit instead of two as originally contemplated.[3,4] Defendant did not appeal his conviction or sentence.

On September 24, 2018, Defendant filed a *pro se* motion under 28 U.S.C. § 2255 to vacate his sentence, wherein he argued that his attorney was ineffective, and his guideline range was incorrect. *See Kelley v. United States,* No. 3:18-cv-908 (M.D. Tenn. Sept. 24, 2018 at Doc. No. 1).[5] Defendant subsequently filed a "supplemental brief" which asserted that his conviction must be set aside under *Rehaif v. United States*, 139 S. Cr. 2191 (2019). (*Id.* at Doc. No. 27). However, on April 15, 2020, this Court rejected Defendant's arguments and denied the motion. *Kelley v. United States,* No. 3:18-cv-908, 2020 WL 1876049, at *10 (M.D. Tenn. April 15, 2020). On February 3, 2021, the Sixth Circuit Court of Appeals affirmed this Court's judgment. *Kelley v.*

---

[2] It appears that the parties intended the sentence to be 100 months, minus credit for all time served from the time Petitioner was to be transferred to federal custody from state custody (forecast in the plea agreement to be July 11, 2017) until the time of sentencing. (Doc. No. 46 at 8 n.1).

[3] The plea and sentencing hearings were conducted by District Judge Sean Cox of the Eastern District of Michigan, sitting by designation in the Middle District of Tennessee. The undersigned was not assigned to the instant criminal case until June 9, 2021.

[4] According to the Government's statements at the sentencing hearing, this was because Defendant completed his state sentence and was released to federal custody sooner than anticipated. (Doc. No. 116 at 4:1-14).

[5] This civil action was originally assigned to District Judge Trauger; however, the case was transferred to the undersigned on November 29, 2018.

*United States,* No. 20-5448, 2021 WL 2373896, at *3 (6th Cir. February 5, 2021).

Defendant is currently housed at USP Hazelton, in Bruceton Mills, West Virginia. *See* BOP Inmate Locator, available at https://www.bop.gov/inmateloc/ (last accessed April 24, 2023). According to the BOP Inmate Locator, Kelley has a release date of August 10, 2024.

### I. Request for Appointment of Counsel

In his motion, Defendant seeks appointment of counsel. (Doc. No. 125 at 5). The Sixth Amendment secures the right of a criminal defendant who faces incarceration to be represented by counsel at all "critical stages" of the criminal process. *United States v. Wade*, 388 U.S. 218, 224 (1967). However, the constitutional right to assistance of counsel does not extend to motions for post-conviction relief. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Shedwick v. Warden N. Cent. Corr. Inst.*, No. 16-3203, 2016 WL 11005052, at *3 (6th Cir. Dec. 30, 2016) ("[T]here is no right to counsel in a post-conviction action."). The decision of whether to appoint counsel for the purpose of seeking compassionate release is a decision within the sound discretion of the Court. *See United States v. Stephens*, No. 06-cr-203065, 2020 WL 3250226, at *2 (E.D. Mich. June 16, 2020). "In exercising discretion as to whether to appoint counsel, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court." *United States v. Woods*, No. 2:03-CR-069, 2020 WL 5805324, at *3 (E.D. Tenn. Sept. 28, 2020) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)). Defendant fails to present any unique circumstances justifying appointment of counsel. A compassionate release request is not a particularly complex claim factually or legally. *See United States v. Drayton*, No. 10-20018-01, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020) (denying motion to appoint counsel related to motion for compassionate release and noting that compassionate release claims are not particularly complex factually or

legally and that the defendant appeared able to adequately present his claim). Defendant has failed to articulate why he is unable to present his request for compassionate release *pro se*. Moreover, the Court believes that it is able to fairly adjudicate such motions even though one side (and not the other) is unrepresented by counsel. That is not to say that learned counsel cannot contribute something, especially something regarding nuances, to a defendant's cause on these motions. But it is to say that typically, the degree of substantive merit of these very fact-based motions is evident to the Court even without learned counsel advocating the merits on Defendant's behalf. Accordingly, Defendant's request for appointment of Counsel (Doc. No. 125 at 5) is **DENIED**.

## II. Request for Release to Home Confinement (18 U.S.C. § 3624(c)(2))

To the extent that Defendant seeks release to home confinement pursuant to 18 U.S.C. § 3624(c)(2), the Court lacks the authority to order such release. Home confinement under 18 U.S.C. § 3624(c)(2) is not a change to a defendant's underlying sentence but is instead a form of prerelease custody wherein the BOP may "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2).

After a district court sentences a defendant, the Attorney General, through the BOP, has the responsibility for administering the sentence. *See* 18 U.S.C. § 3621(a) ("A person who has been sentenced to a term of imprisonment ... shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed"). The BOP has the sole authority to determine the place of an inmate's confinement. *See* 18 U.S.C. § 3621(b). Although the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") expanded BOP's authority to place a prisoner in home confinement, it did not grant courts the authority to review those placement decisions. *See* Pub. L. No. 116-136, § 12003(b)(2) (Mar. 27, 2020); *see also United States v. Brummett*, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) ("[T]he authority to

grant home confinement remains solely with the Attorney General and the BOP."); *United States v. Amarrah*, 458 F. Supp. 3d 611, 620 (E.D. Mich. 2020) ("The Court . . . does not have statutory authority to order that Defendant's current sentence[ ] be modified to home confinement."). Accordingly, because the Court does not have the authority to grant Defendant's requested relief, Defendant's motion, to the extent it requests an order for home confinement under 18 U.S.C. § 3624(c)(2), is **DENIED**.

III. Request for Compassionate Release (18 U.S.C. § 3582(c)(1)(A)(i))

LEGAL STANDARD

The Sentencing Reform Act of 1984 abolished parole and established a system of determinate sentencing that prohibits a court from modifying a term of imprisonment once it is imposed unless such authority is expressly granted by statute. *See* Sentencing Reform Act of 1984, Pub. L. No. 98–473, Title II, ch. 2, § 212(a), 98 Stat. 1837, 1998 (enacting 18 U.S.C. § 3582(c)). The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), is one of a handful of exceptions to the general rule of finality in federal sentencing, and it gives district courts discretion to reduce a defendant's previously imposed term of imprisonment if certain procedural and substantive requirements are met. *See* 18 U.S.C. § 3582(c)(1)(A). Previously, only the BOP could move the district court for compassionate release; however, the passage of the First Step Act in 2018 expanded access to compassionate release by allowing inmates to file motions for compassionate release on their own behalf. *See* First Step Act of 2018, Pub. L. No. 115–391, § 603(b), 132 Stat. 5194, 5239 (codified at 18 U.S.C. § 3582(c)(1)(A)). As amended by the First Step Act, Section 3582(c) provides:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).

As a threshold matter, the Court must first examine whether Section 3582(c)(1)(A)'s "exhaustion" requirement[6] has been satisfied before considering a defendant-filed motion to modify a term of imprisonment. *United States v. Alam,* 960 F.3d 831, 833–34 (6th Cir. 2020). In addition to this exhaustion requirement (or waiver of this requirement by the Government), which is procedural in nature, as indicated above, Section 3582(c) sets forth three substantive requirements for the granting of compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). The Court must: (1) find that "extraordinary and compelling reasons merit a sentence reduction"; (2) find "that the reduction is consistent with 'applicable' Sentencing Commission policy statements"; and (3) consider the factors in Section 3553(a), to the extent they apply. *United States v. Jones,* 980 F.3d 1098, 1106 (quoting *Ruffin*, 978 F.3d at 1003-06). A motion for compassionate release may be denied when any of these three requirements are not met. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

---

[6] As indicated above, this requirement is met when "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

As for the first requirement, Congress did not define the terms "extraordinary and compelling" and instead delegated the task to the United States Sentencing Commission, instructing it to issue "general policy statements ... describ[ing] what should be considered extraordinary and compelling reasons for a sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. McCall*, 56 F.4th 1048, 1053 (6th Cir. 2002) (en banc) (citing 28 U.S.C. § 994(t)). The Sentencing Commission's policy statement regarding sentence reductions under section 3582(c)(1)(A) is found at U.S.S.G. § 1B1.13. Consistent with the pre-First Step Act statutory language, the policy statement provides that a reduction is available "[u]pon motion of the Director of the Bureau of Prisons," and its commentary likewise states that a reduction "may be granted only upon motion by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.3, cmt. n.4. As a result, the policy statement does not reflect current law, and, in the absence of an amended policy statement, almost all circuit courts have held that the current policy statement is not applicable to defendant-filed motions.[7] Therefore, "[u]ntil the Sentencing Commission updates section 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Jones,* 980 F.3d at 1109. "But the mere fact that defining extraordinary and compelling 'is left to the district court's discretion, with no heavy congressional thumb on either side of the scales, does not mean that no legal standard governs that discretion." *United States v. Hunter*, 12 F.4th 555, 562 (quoting *Martin v. Franklin*

---

[7] *See, e.g.*, *United States v. Ruvalcaba*, 26 F.4th 14, 20–24, 28 (1st Cir. 2022); *United States v. Brooker*, 976 F.3d 228, 235 (2d Cir. 2020); *United States v. Andrews*, 12 F.4th 255, 259 (3rd Cir. 2021); *United States v. McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020); *United States v. Shkambi*, 993 F.3d 388, 392–93 (5th Cir. 2021); *United States v. Jones*, 980 F.3d 1098, 1107–11 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021); *United States v. Long*, 997 F.3d 342, 355 (D.C. Cir. 2021). *But see United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021) (holding that the policy statement is applicable to motions filed by defendants).

*Capital Corp.,* 546 U.S. 132, 139 (2005)). Instead, the phrase "extraordinary and compelling reasons" must be interpreted "'in accord with the ordinary public meaning of its terms at the time'" Congress enacted the compassionate release statute in 1984. *McCall*, 56 F.4th at 1055 (quoting *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020)). This means a defendant must demonstrate that his reasons are both (1) "'most unusual,' 'far from common,' and 'having little or no precedent,'" (i.e., extraordinary) and (2) "'forcing, impelling, driving'" (i.e., compelling). *Hunter*, 12 F.4th at 562 (quoting Webster's Third New International Dictionary: Unabridged 463, 807 (1971)); *see also McCall*, 56 F.4th at 1055 (same). In addition to the plain meaning of the terms "extraordinary and compelling," the policy statement's descriptions of those terms can be instructive, as they still "shed light on the meaning of 'extraordinary and compelling reasons.'"[8] *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). *See also United States v. Taylor*, No. 19-20056, 2021 WL 21760, at *2 (E.D. Mich. Jan. 24, 2021) ("Although the Sixth Circuit held that U.S.S.G. § 1B1.13 does not apply to compassionate release motions filed by imprisoned individuals, it remains a measure by which district courts can evaluate what constitutes extraordinary and compelling circumstances." (citation omitted)); *United States v. Rice*, No. 7:15-019-DCR, 2021 WL 141690, at *2–3 (E.D. Ky. Jan. 14, 2021) ("While the policy statement found in U.S.S.G. § 1B.13 of the Sentencing Guidelines is not binding, it provides a helpful starting point for deciding whether extraordinary and compelling reasons exist.").

In adjudicating a defendant-filed motion, if a district court determines that "extraordinary and compelling reasons" for compassionate release exist, the court then determines whether compassionate release is warranted in light of the Section 3553(a) sentencing factors. *See Jones*,

---

[8] The "Family Circumstances" category at U.S.S.G. § 1B1.13 provides that "extraordinary and compelling reasons" exist in the event of the "death or incapacitation of the caregiver of the defendant's minor child" or "the incapacitation of the defendant's spouse or registered partner" when the defendant is the only available caregiver.

980 F.3d at 1112. The sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
> i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
> ii) [in effect at the time of sentencing]
>
> (5) any pertinent policy statement—
> A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
> B) [and in effect at the time of sentencing]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## ANALYSIS

A. <u>Exhaustion of Administrative Remedies</u>

The Court examines first whether Defendant has satisfied § 3582(c)(l)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *See Alam*, 960 F.3d at 833-34. In this case, the United States concedes that Defendant submitted a request to the Bureau of Prisons for compassionate release and that the BOP denied

Defendant's request. (Doc. No. 129 at 4). The undersigned is also satisfied that Defendant has made a proper showing that he has exhausted his administrative remedies. Thus, the Court turns to the substantive merits of Defendant's request.

B. <u>Extraordinary and Compelling Reasons</u>

   i.    Family Circumstances

To grant the Motion for Compassionate Release, the Court would have to determine that "extraordinary and compelling reasons" exist for Defendant's compassionate release. Defendant bears the burden to persuade the Court to make such a determination. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling."). As noted above, the Court has "*full discretion* to define 'extraordinary and compelling'" in the sense that it is not bound by the reasons listed in policy statement §1B1.13. *Jones*, 980 F.3d at 1111 (emphasis added).

In his *pro se* motion, Defendant's primary factual argument supporting the existence of "extraordinary and compelling reasons" for release is the assertion that that Defendant's wife, Takesha Kelley, "suffers from a debilitating illness (Degenerative Disk Disease)." (Doc. No. 125 at 2). The defendant further states that his wife needs someone to assist her at home and that this would also provide a stable living environment for the defendant. (*Id.*). In support of this contention, Defendant has provided a one-paragraph letter, dated September 15, 2022, from a family nurse practitioner in Nashville, Tennessee. (Doc. No. 125 at 13). The letter indicates that Takesha Kelley is under professional care for the management of "hypertension, generalized anxiety, seizure disorder, bipolar disorder, and chronic pain due to spondylolysis and spinal stenosis of her cervical and lumbar region." (*Id.*). The letter also references the health of

Defendant's wife, which reportedly deteriorated after an unspecified abdominal surgery in 2021. Further, the letter reflects that Ms. Kelley lives alone and "will benefit from someone being with her at home." (*Id.*).

While the Court is not bound to the policy statement at § 1B1.13, it does find the Guidelines' examples of extraordinary and compelling family circumstances at least informative. *See Jones*, 980 F.3d at 1109. The Sentencing Commission underscored two scenarios where a defendant's family circumstances would be extraordinary and compelling. *See* U.S.S.G. §1B1.13, n.1. The first scenario arises when an imprisoned defendant's minor children may not receive adequate care because the children's primary caregiver dies or becomes incapacitated. *Id.* The second scenario occurs when an imprisoned defendant's spouse or registered partner can receive adequate care only from the defendant. *Id.* In this case, the Court is not convinced that either scenario is present. Though the Court is certainly sympathetic to those facing medical and health problems, the only evidence of Ms. Kelley's health conditions is a non-specific, one-paragraph letter signed by a nurse practitioner. (Doc. No. 125 at 13-14). Even though the letter sets forth the general diagnoses of Defendant's wife and the occurrence of an unspecified abdominal surgery in 2021, the letter stops short of indicating how the diagnoses impact Ms. Kelley's ability to perform daily living activities on her own. Further, there is no evidence before the Court to establish that Defendant is the only available caregiver for his wife. Rather, as noted by the Government, "twenty separate individuals signed a letter showing a willingness to help Kelley and support him if released." (Doc. No. 125 at 15, "Letter of Family and Friends"). Thus, it would be logical to conclude, based on the overwhelming level of support offered in the Letter of Family and Friends, that these same "family and friends" would also be willing to assist Defendant's wife with her medical needs until Defendant's release from incarceration. In sum, the letter from the nurse

practitioner does not establish that Ms. Kelley is unable to care for herself or that Defendant is the only person available to provide care to her. As such, the Court is unable to find that extraordinary and compelling reasons exist based on family circumstances.

ii. Post-Conviction Rehabilitation

In addition to his wife's medical needs, the Defendant argues for his release based on his post-sentencing rehabilitative efforts, namely his completion of the BOP challenge program[9] and other BOP educational courses, documentation of which was provided in the form of certificates of completion. (Doc. No. 125 at 2, 9-12). The Court certainly commends Defendant's self-improvement efforts while incarcerated and is hopeful that these efforts will serve Defendant well in the future; however, this type of self-improvement is expected of federal inmates. *See United States v. Hymes*, 19 F.4th 928, 934 (6th Cir. 2021) (recognizing that a prisoner's participation in prison programs and lack of disciplinary infractions are "behavior expected of federal prisoners"). Relatedly, Defendant has not shown that such self-improvement is unusual. And although Defendant believes that his post-conviction rehabilitative efforts are "extraordinary and compelling," the BOP has clear opinions otherwise and has described Defendant's institutional adjustment as "poor," and referenced a "number of 100 and 200 level incident reports [involving Defendant]" (Doc. No. 125 at 18). The Government's Response lacks details regarding Defendant's institutional disciplinary history; however, Defendant has offered, by way of letter, details surrounding a fight with another inmate and telephone-use infractions. (See Doc. No. 125

---

[9] According to the Federal Bureau of Prisons Directory of National Programs, "The Challenge Program is a cognitive-behavioral, residential treatment program developed for male inmates in penitentiary settings. The Challenge Program provides treatment to high security inmates with substance abuse problems and/or mental illnesses. Programming is delivered within a modified therapeutic community environment; inmates participate in interactive groups and attend community meetings. In addition to treating substance use disorders and mental illnesses, the program addresses criminality, via cognitive-behavioral challenges to criminal thinking errors. The Challenge Program is available in most high security institutions." *See* https://www.bop.gov/inmates/custody_and_care/docs/20170518_BOPNationalProgramCatalog.pdf

at 19-20). The Court finds Defendant's admitted non-compliance with institutional rules and regulations contrary to behavior that exemplifies an extraordinary and compelling reason for release.

To the extent that Defendant relies on his purported rehabilitation while in BOP custody as an extraordinary and compelling reason for release, it bears noting that "Congress has made clear that rehabilitation 'alone' does not provide a proper basis for relief." *Ruffin*, 978 F.3d at 1009 (quoting 28 U.S.C. § 994(t)); *see also Hunter*, 12 F.4th at 572. Given that the Court has determined that Defendant's family circumstances (wife's medical conditions) do not rise to the level of extraordinary and compelling, then Defendant's rehabilitation would have to be considered extraordinary and compelling standing alone, which is inconsistent with congressional intent. For these reasons, the Court is unable to find that Defendant's rehabilitation is an extraordinary and compelling reason to grant compassionate release.

C. Title 18 U.S.C. § 3553(a) Factors

Even assuming *arguendo* that the Defendant met the first step of the compassionate-release test—meaning, the Court found an "extraordinary and compelling" reason for his early release (which it has not)—the Section 3553(a) factors do not warrant a sentence reduction under the particular circumstances of this case. At the sentencing hearing, the Court assessed the full record and pronounced a parsimonious sentence compliant with 18 U.S.C. § 3553(a) and governing law. (Doc. No. 116 at 4:14-7:7*)*. The result, a 97-month sentence, reflected all sentencing factors and was below the recommended Guideline sentence of 120 months. The sentence was also fully contemplated by the parties in their *binding* plea agreement. (Doc. Nos. 46 at 8; 116 at 7:6-9).[10] In

---

[10] Although the Court is not in a position know of all benefits conferred on Defendant by virtue of his decision to enter into an 11(c)(1)(C) agreement with the Government, it is apparent that Defendant bargained for that sentence that was imposed. In doing so, he acknowledged that his behavior merited the sentence imposed.

other words, Defendant conceded at the time that his 97-month sentence was not disproportionately long, and so he faces a major uphill battle arguing that the sentence somehow has since become disproportionately long. He has not prevailed in that battle, and so he fares poorly on the factor of unwarranted sentencing disparities, since nothing suggests that this substantially-below-guidelines sentence would be disparately long if it were not shortened as requested by Defendant. If anything, shortening the sentence would raise a risk of the sentence being unwarrantedly low.

The Court has thoroughly reviewed the record in this case in light of *all* Section 3553(a) sentencing factors (and their purpose) and is convinced that these statutory factors strongly support Defendant's incarceration for the remainder of the 97-month sentence imposed by Judge Cox. Such a sentence remains not greater than necessary considering especially not only the need to avoid unwarranted sentencing disparities, but also "the nature and circumstances of the offense and the history and characteristics of the defendant"; the need "to afford adequate deterrence to criminal conduct"; the need "to protect the public from further crimes of the defendant"; and the need "to promote respect for the law."

In sum, Defendant's claimed familial hardship and rehabilitation do not rise to the level of extraordinary and compelling, and they certainly do not cast doubt upon the appropriateness agreed-upon sentence which was imposed. The record here simply does not support Defendant's early release.

## CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, because Defendant has not established "extraordinary and compelling reasons" supporting

his claim for relief. Even if Defendant had established such reasons, a reduction in his sentence would not adequately reflect the § 3553(a) factors, which initially supported and continue to support the sentence imposed in his case.

For the reasons stated herein, the Defendant's Motion is (Doc. No. 125) is **DENIED**. An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE